IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION
CASE NO.

ROBERT M. KOFFLER,

    Plaintiff,

v.

LERA INVESTMENT TECHNOLOGIES,
INC., a Delaware corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, ROBERT M. KOFFLER ("Koffler"), by and through counsel, sues Defendant, LERA INVESTMENT TECHNOLOGIES, INC. ("LIT") for the reasons set forth below.

## NATURE OF ACTION

1. This is an action brought under Florida's Private Whistleblower Act ("FWA") for retaliation in violation of the FWA.

## PARTIES AND JURISDICTION

2. This is an action for damages that exceeds $75,000.

3. Koffler is an individual domiciled in Colorado, and was employed by the Defendant LIT.

4. Defendant LIT is a Delaware corporation, registered to do business in Florida, with its principal place of business at 1111 Brickell Avenue, Suite 2775, Miami, Florida 33131. Defendant LIT employed Koffler in Miami-Dade County, Florida.

Compl.

Defendant LIT is a private company that employs in excess of 10 employees and is an employer under the FWA.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1),(c)(1) because the claim against Defendant LIT exceeds the $75,000 jurisdictional threshold and Koffler's citizenship is completely diverse from Defendant LIT's citizenship.

6. For purposes of the citizenship diversity requirements pursuant to 28 U.S.C. § 1332:

   a. Koffler is a Colorado citizen and domiciliary, because he is domiciled and resides in Colorado; and

   b. Defendant LIT, which is a Delaware corporation, is a citizen of Delaware and Florida because it was incorporated in Delaware and has its principal place of business in Florida.

7. This Court's exercise of personal jurisdiction over Defendant LIT is proper because Defendant LIT: (a) is registered to business in Florida and has its principal place of business in Florida; (b) pursuant to Fla. Stat. § 48.193(1)(a)(1), operates, conducts, and engages in business in Florida; (c) pursuant to Fla. Stat. § 48.193(1)(a)(2), committed a tortious act in Florida; and (d) pursuant to Fla. Stat. § 48.193(2) is engaged in substantial and not isolated activity within Florida.

8. Pursuant to 28 U.S.C. § 1391, in the United States District Court for the Southern District of Florida is the proper venue because a substantial part of the events or omission giving rise to the claims occurred here. Specifically, venue is proper in this District because Koffler worked in, and Defendant LIT conducts business in, and some or

2

De La Peña Group, P.A., Attorneys & Counselors at Law
701 Brickell Avenue, 15th Floor, Miami, Florida 33131   Tel: 305.377.0909  Fax: 305.735.6469

all of the events giving rise to Koffler's claims occurred in Miami-Dade County, Florida, which is within the Southern District of Florida.

9. All conditions precedent to the commencement of this action have been satisfied, have occurred or have been waived.

10. Under Florida's choice of law doctrine, Florida law governs this case because the acts or omissions set forth in this action occurred in Florida

## GENERAL ALLEGATIONS

11. Koffler was the sole founder, Chairman, and CEO of LIT, since its inception in 2013 until December 2022, when an outside CEO was brought in to run Defendant LIT.[1]

12. From the time he stepped down as LIT's CEO in December 2022 through June 17, 2024, Koffler held the executive paid position of Head of Capital Markets and Funding Facilities. He also was Chairman of the Board until December 2023, and thereafter until his termination on June 17, 2024, remained as a member of LIT's Board of Directors as well as a board member on several of Defendant LIT's subsidiaries.

13. Defendant LIT is a very valuable and important financial/technology company that has developed a unique business offering to deliver technology as a service to major companies around the world. It is a potential "unicorn" in that it is one of those rare privately-owned start-up companies that have the potential to reach a billion-dollar valuation.

---

[1] Defendant LIT started as a Delaware limited liability company, but was subsequently converted into a Delaware corporation in January 2023.

3

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909  FAX: 305.735.6469

14.     The most important business partner of Defendant LIT is Accenture (the largest technology service company in the world with $65 billion in annual revenue), who in turn offers Defendant LIT solutions to their end clients, mostly being Fortune 500 global companies. Koffler was the primary person responsible for Defendant LIT's success. Defendant LIT currently has about 20 employees.

15.     As of early 2023, Defendant LIT has grown its banking facilities into approximately $1 billion, such that was in a position to rapidly expand its business.

16.     In or about June 2023, after close to a year of negotiation conducted by Koffler, Defendant LIT raised the first $15 million of institutional equity funding from Kickstart Fund ("Kickstart"), a Utah-based Silicon Valley tech investor.

17.     In or about April 2023, after close to a year of negotiation, Defendant LIT closed a one of kind $600 million banking facility with Santander Bank, negotiated by Koffler.

18.     In or about December 2023, Defendant LIT, thanks to Koffler's earlier efforts with Santander Bank, began negotiations with Google and McDonald's to provide the mechanism for a potential billion-dollar facility between these two corporate giants, which negotiations would never have materialized but for Koffler's involvement with Defendant LIT and the expectation of Koffler's continued involvement with Defendant LIT at that time.

19.     In a recent professional valuation of Defendant LIT dated June 30, 2022, the firm of DBO Partners, LLC, an important investment banking firm valued Defendant LIT in between a range of $243 million up to $2 billion, using different valuation methods.

20.     In or about 2016, Camilo Montana and Gabriel Holschneider became shareholders (through their controlled entities) in LIT, buying out the other shareholders

4

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909  FAX: 305.735.6469

(other than Koffler). Koffler, Montana and Holschneider, together with their controlled entities through which they were shareholders in LIT will be referred to jointly as the "LIT Shareholders" or separately as a "LIT Shareholder."

21. Koffler was a LIT Shareholder through Maite. Montana was a LIT Shareholder through Mashta. Holschneider was a LIT Shareholder through Tri-Cap.

22. Each of Koffler, Montana, and Holschneider through their respective entities, Maite, Mashta, and Tri-Cap, respectively held a 33% interest in LIT through the commencement of their association in approximately 2016 through sometime in June 2023, when Kickstart became the first equity institutional shareholder.[2]

23. Koffler was the visionary "working partner" at LIT. He defined the company's vision and strategy and made all operational decisions of LIT. The other LIT Shareholders provided funding for Defendant LIT and support to Koffler. The three LIT Shareholders got along well during these early years, a corporate band of brothers that shared a vision and plan for Defendant LIT.

24. From inception, the three LIT Shareholders kept the same percentage interest in LIT while maintaining a separate tally of complex interpersonal or intercorporate loans. As to Koffler and Maite, these loans were guaranteed/pledged/ collateralized with shares of the companies that Maite owned and operated, one of them being LIT.

---

[2] With the entry of Kickstart as an institutional equity shareholder, the three Defendant LIT Shareholders reduced their shareholding in Defendant LIT into the low 20%. Kickstart decided to invest in Defendant LIT as they expected Defendant LIT's stock value to multiply into the hundreds of millions.

5

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

25. In October to November 2023, there were various dealings between and among, Koffler, Montana, and Holschneider, as the ultimate beneficial owners of the majority of the Defendant LIT shares. As part of this, Koffler was induced to effectively transfer his Defendant LIT shares to Montana (Mashta) via an Assignment, under the representation that he was doing so in an effort to help Montana with his financial crisis, so that *inter alia*, Montana would not lose his home, and that Montana would not execute on the Assignment but would instead otherwise cause it to be canceled once Montana's imminent foreclosure crisis was resolved.

26. As part of these dealings, Koffler, Montana, and Holschneider worked out a settlement amongst them were they would resolve their inter-personal loans, using as payment Koffler's LIT shares, which as agreed by all, would effectively be held by Montana but owned by Koffler for up to a 3-year period within which Koffler could pay off his debt to the other two partners. Again, as set forth above, Montana would not execute or use the Assignment, as part of this settlement of debts, because among other consequences, there would be significant tax ramifications for all parties involved.

27. In late March 2024, Koffler was first informed that Montana, with the concurrence and assistance of Holschneider, had decided not to undo or cancel the Assignment as he had promised. Rather, Montana and Mashta proceeded instead to convert Koffler's LIT Shares without any consideration whatsoever. Here, it became clear that the representations made by Montana and Holschneider to secure the Assignment from Koffler in the first instance were fraudulent in that Montana never intended to cancel the Assignment after he had resolved the immediate crises regarding the foreclosure of his home. Rather, it was always his intent, with the aid and assistance of Holschneider to

6

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

fraudulently induce Koffler to execute the Assignment. The fraudulently-acquired Assignment, in turn, resulted in Montana and Holschneider controlling LIT, as they acquired approximately 99.5% of Koffler's shares in LIT.

28.     From March 2024 through early June 2024, Koffler sought to settle the shareholder disputes with Montana and Holschneider.  On June 7, 2024, in furtherance of the settlement discussion between the three shareholders, Montana and Holschneider asked Koffler to set forth his disputed issues with them regarding LIT and other matters between them.

29.     On or about June 11, 2024, in response to his fellow shareholder's request, Koffler set forth his position regarding their ongoing shareholder dispute in LIT as well as other issues. Koffler notified LIT of the obligation to disclose the financial and control issues relating to the shareholder dispute, to the universe of LIT's stakeholders, and (unless the dispute was resolved), such disclosure must be done prior to the upcoming LIT Board of Directors' meeting that was scheduled for June 21, 2024

30.     On June 13, 2024—on not hearing any response—Koffler followed up with LIT, via Montana and Holschneider, with additional urgency to a resolution of their shareholder dispute on the basis that its continued existence was a material issue that had to be disclosed to the gambit of potential interested parties doing business with LIT. Specifically, Koffler objected to LIT's ignoring the disclosure requirement and emphasized that he would proceed to make such disclosures to the universe of potential LIT stakeholders, before the imminent disbursements that were scheduled to be made by new shareholders and investors in LIT.

7

De La Peña Group, P.A., Attorneys & Counselors at Law
701 Brickell Avenue, 15th Floor, Miami, Florida 33131   Tel: 305.377.0909  Fax: 305.735.6469

Compl.

31. On June 13, 2024, Koffler again objected to LIT's failure to disclose and refused to participate in such activity. Specifically, Koffler identified that the failure to make the disclosures that he believed LIT was required to make about the shareholder disputes with Montana and Holschneider was materially-significant information which could result in possible civil or criminal violations of Section 17(a) of the Securities Exchange Act, and Rule 10b-5 thereunder.

32. Through the many communications with Montana and Holschneider—LIT's controlling shareholders and members of its Board of Directors—Koffler made it clear to LIT that he objected to and was going to refuse to participate in LIT's intended plan to deliberately fail to inform investors of materially-significant information that LIT was required to provide them prior to having these investors make investments in LIT, in violation of Section 17(a) of the Securities Exchange Act, and Rule 10b-5.

33. In addition and intimately related to the above, Koffler intended to inform LIT's auditors of his continuing shareholder dispute with Montana and Holschneider, the effect of which could significantly impact Defendant LIT's ongoing business and prospects for any future financing.

34. On June 17, 2024—within 3 days of Koffler objecting to Defendant LIT's, violation of law—Koffler was fired by LIT's CEO, John Sepple, from his paid position at Defendant LIT without notice or warning, and he was further removed from the Board of Directors at Defendant LIT, again without notice or warning. A copy of this termination letter issued by John Sepple, CEO of LIT, is attached as **Exhibit A**.

8

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

Compl.

## COUNT I
## VIOLATION OF FLA. STAT. § 448.102(3):
## FLORIDA'S PRIVATE WHISTLEBLOWER ACT

35. Koffler incorporates by reference Paragraphs 1 through 34 of this Complaint as though fully set forth below.

36. Koffler was an employee of Defendant LIT, a private company.

37. At all material times, Koffler was to be protected from negative employment action by Fla. Stat. § 448.102, commonly known as Florida's "whistleblower statute," which in relevant part provides:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
> . . . .
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

38. Koffler did engage in statutorily protected activity by objecting to and refusing to participate in LIT's intention to secure funding and financing from shareholders and investors without making the required material financial disclosures to these affected parties, prior to these parties making millions of dollars of investments in LIT. This would have been a violation of Section 17(a) of the Securities Exchange Act and Rule 10b-5 thereunder and Koffler objected to and refused to participate in such activity or action.

39. Immediately after engaging in statutorily-protected activity, Koffler suffered negative employment action, termination of his paid executive position and the termination as a member of the Board of Directors of Defendant LIT, each of which is a direct result of this statutorily-protected activity.

40. Koffler's termination and his engaging in statutorily-protected activity are causally related.

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

41. Defendant LIT knew that Koffler was engaged in protected conduct as referenced herein.

42. Defendant LIT discharged, terminated and retaliated against Koffler from his employment and after his employment, and otherwise retaliated against him because of his protected conduct. In fact, after he was terminated, the controlling LIT shareholders, namely Montana and Holschneider (through their entities), engaged in a slew of litigation, with the intent to silence and obliterate Koffler.

43. As a direct and proximate result of the violations of Fla. Stat. § 448.102(3), as referenced and cited herein, Koffler has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path that was anticipated from his employment at Defendant LIT.

44. These benefits and privileges included a $10,000,000 life insurance policy that had Koffler's wife as a beneficiary.

45. These benefits and privileges included a yearly salary of $560,000, which salary had been temporarily reduced (together with that of a several other senior executives) to an amount of $240,000; however, it was agreed that the salary was to be increased/reinstated at the higher amount for Koffler and such other employees in the near future.

46. As a direct and proximate result of the violations of Fla. Stat. § 448.102(3), as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, Koffler is entitled to all relief necessary to make him whole.

10

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909   FAX: 305.735.6469

Compl.

**WHEREFORE,** Plaintiff, Robert M. Koffler, demands damages against Defendant LIT for violation of Florida's Private Sector Whistle-blower's Act (Fla. Stat. § 448.102), including but not limited to all relief available under § 448.103, such as:

(a) an injunction restraining continued violation of this act,

(b) reinstatement of the employee to the same positions, including the board, held before the retaliatory personnel action, or to an equivalent position,

(c) reinstatement of full fringe benefits and seniority rights,

(d) compensation for lost wages, benefits, and other remuneration,

(e) any other compensatory damages allowable at law,

(f) attorneys' fees, court costs, and expenses, and

(g) such other relief this Court deems just and proper.

Dated: November 19, 2024.                   Respectfully submitted,

                                                DE LA PEÑA GROUP, P.A.
                                                *Counsel for Plaintiff*
                                                701 Brickell Avenue, 15th Floor
                                                Miami, FL  33131
                                                Tel:  305.377.0909
                                                Fax: 305.735.6469
                                                E-mail: service@dlp-law.com
                                                                 paralegal@dlp-law.com

                                    BY:    */s/ Leoncio E. de la Peña D.*
                                                Leoncio E. de la Peña D., Esq.
                                                Florida Bar No. 454508
                                                Otto C. de Córdoba, Esq.
                                                Florida Bar No. 633712
                                                Tracy Pérez, Esq.
                                                Florida Bar No. 860441

11

DE LA PEÑA GROUP, P.A., ATTORNEYS & COUNSELORS AT LAW
701 BRICKELL AVENUE, 15TH FLOOR, MIAMI, FLORIDA 33131   TEL: 305.377.0909  FAX: 305.735.6469

# Exhibit A

June 17, 2024

LERA Investment Technologies, Inc., ("Company") is writing to inform you that your employment with the Company is terminated effective as of June 17, 2024, ("Employment End Date").

The Company kindly requests your acknowledgment and execution of the attached Letter and Termination Certificate in Annex A. Upon receipt of your signed documents, the final payroll payment, due by the Employment End Date, will be processed in accordance with LIT's standard payroll practices. Please note, this payment will be subject to necessary withholdings, customary payroll taxes, and other deductions as mandated by law.

We ask that you return all Company property in your possession, including materials, and documents, and passwords (login credentials) to your manager on or before the Employment End Date. Furthermore, Company will provide a pre-paid FedEx label to mail the laptop, charges, access cards and any other tangible property. Failure to do so may result in a delay in the issuance of your final payroll payment.

Your Health, Dental, Life, and STD/LTD insurance coverage will cease on your Employment End Date. Please arrange for alternative coverage to avoid any issues.

We remind you that certain fiduciary obligations continue post termination. Please refrain from using any Confidential Information or trade secret information of the Company's for any purpose as set forth in the Confidentiality Agreement set forth in Annex A. You are no longer authorized to speak for or act on behalf of the Company and must immediately cease doing so, this also means you must immediately cease representing yourself as an officer or director of the Company in any manner or form. You are also warned that any defamatory statements by you or **any** attempt by you to interfere with the business of the Company will be prosecuted to the fullest extent of the law. We sincerely hope this cautionary language is not necessary.

We want to express our appreciation for your contributions during your tenure with our Company. Your dedication and hard work have been invaluable, and we wish you success and happiness in your future endeavors.

Sincerely,

*John Sepple*
—————————————
2FFBB802CD204F1...
—————————————

**John Sepple**
**Chief Executive Officer**

Please acknowledge and confirm your understanding and acceptance of the above by signing, dating, and returning a copy of this Letter to us.

_____

**Name (Print)**

_____

**Signature**

**Date:**

## ANNEX A

## TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any Confidential Information (as defined in the Employee Confidential Information Agreement signed by me (the "Confidentiality")) belonging to LERA Investment Technologies, Inc., a Delaware corporation (the "Company"), or any of its current or future subsidiaries, affiliates, successors, or assigns (collectively with the Company, the "Company Group").

I further certify that I have complied with all the terms of the Confidentiality, including the reporting of any IP (as defined therein), conceived, or made by me (solely or jointly with others) covered by the Confidentiality, and I acknowledge my continuing obligations under the Confidentiality.

I further agree that, in compliance with the Confidentiality, I will preserve as confidential all of the Company Group's Confidential Information (as defined therein).

I further agree that, in compliance with Section 6 of the Confidentiality, for twelve (12) months immediately following the termination of my Relationship with the Company, I shall not either directly or indirectly solicit any of the Company Group's employees or independent contractors to terminate their relationship with the Company Group, either for myself or for any other person or entity.

Date:

Employee:

_____
(Print Employee's Name)

_____
(Signature)